When you're ready, counsel. Thank you, Judge. Good afternoon. May it please the court. My name is Sylvia Esparza and I am the counsel for Mr. Cerecedo. The parties were asked by the panel to address to the extent of any if Patel v. Garland may preclude this court from reviewing one or more of the issues raised in this petition. And our argument would be that Patel v. Garland does not preclude this court from review because the primary question before the court is a legal question. Patel v. Garland held that federal courts of appeals are barred from reviewing factual findings underlying denials of discretionary application, sorry, denial of certain applications for relief such as cancellation of removal. Since Patel v. Garland, there has been at least one Tenth Circuit case from the Tenth Circuit in Maryland. And in that case, it's similar to this case where the petitioner had filed multiple motions to reopen after Pereira and after Ms. Chavez, alleging that he was eligible for cancellation of removal. And the board dismissed his claims each time in the latest. Some of the issues you have are legal, like how Ms. Chavez would apply to this case. But what about an issue like whether or not his departure in 2007 was voluntary? Isn't that a factual issue that's barred by Patel? Or is there a legal standard issue embedded in that? We would argue that it's a mixed question of law and fact. So a legal standard applying to undisputed facts. It's not disputed that he left in 2007, that he signed a voluntary return. But the issue is whether it meets the standard of, is it voluntary and intelligent or voluntary return? Did it interrupt the physical presence? So that's a mixed question, which is also been covered. Well, the mixed question kind of begs the question whether it's ultimately factual. We know that Patel carves out the Gasparilla standard where if it's application of law to undisputed facts. But the question whether or not it was voluntary, that sounds more factual than legal, doesn't it? Well, I disagree. I think that the, I think that Patel versus Garland mentioned Guerrero Lasprilla versus Barr. And in that case, they also said that it could still have jurisdiction to review questions of law and facts. But I don't think that we even have to go there because the primary question before the court is the legal question of whether Mr. Cedecedo is eligible for cancellation removal under the stop time rule. Well, but if his departure in 2007 was voluntary, wouldn't that alone defeat him accruing 10 years, even if Ms. Chavez does stop time doesn't apply? No, because he continues to accrue time. He is continuing to accrue time right now. The notice to appear was defective. And the two Supreme Court cases were. The stop time sets an earlier date for what would otherwise be the applicable date, which is the date of application. The stop time rule moves it up from that. But it stops at the date of the application, according to the language of the statute, doesn't it? The stop time rule applies in two circumstances. When the notice to appear is issued, a notice to appear that doesn't have any defects, that stops the time, or a commission of a criminal offense. And so, in this case, the notice to appear was defective. He continues to accrue time. Counsel, with regard to whether he voluntarily signed the form or not, it was, there's no disputing that it was actually translated to him, and he signed the form in his native language, right? So, is your reliance then on what he was told by the IJ? Yes, Judge, it was, our argument is that there was testimony in immigration court where he had one option, and that is, do you have a fear of returning to Mexico? And if you don't have a fear of returning to Mexico, which he did not at that time, then you don't have any other options. Then sign here. And that's what he did. And it's unclear of why they were even talking, why they gave him a Spanish version, because he's practically a native English speaker. He came to the United States when he was nine years old. And so, the conversation was always in English. And was he eligible for cancellation at that time? Yes, he was, Judge. He had 10 years of physical presence, and he had two U.S. citizen children. He had no disqualifying offenses. I want to go back to your other point, because I'm looking at the language of the statute, and it says, has been physically present in the United States for a continuous period of not less than 10 years, immediately preceding the date of such application. So, you take the date of the application, and you go back 10 years, but that would be before the 2007 departure. So, there isn't 10 years between the 2007 departure and the date of the application. Well, the NTA, like I said, the NTA is what triggers that stop time rule. But this isn't the stop time. This is the normal rule, not with the stop time gloss on it. The normal, one of the eligibility requirements is that you'd be physically present for not less than 10 years, immediately preceding the date of such application. And he wasn't, because the 2007 voluntary departure was within the 10-year period preceding the date of the application. Well, we would argue that he was, because it doesn't break. The voluntary return doesn't break his continuous presence. But it's involuntary. But that's why I'm saying it seems to be load-bearing whether or not it was voluntary. Right. Well, I mean, again, we're arguing that it wasn't voluntary because he testified that he was only given one option, which is if he had a fear of returning to Mexico. And he did not have a fear of returning to Mexico. He wasn't given other options. And so, that's why it wasn't voluntary and intelligent. And that's why Ibarra-Flores would control in this matter. Very similar issue. He was told by the CBP officer, hey, you can adjust your status. You need to depart. You can come back in. And he was told false information. Same thing here. When he had his encounter with ICE, they told him that the only way that you can fight your case, that you could challenge your removal, is by having a fear of returning to Mexico. If you don't have one, then sign here. And that's what he did. So, it wouldn't stop his continuous physical presence. But again, I think that that issue doesn't have to be resolved because his presence continues to accrue. I don't know if the government would disagree that his presence doesn't continue to accrue based on the defective notice to appear. The argument the government has is just that he has a crime involving moral turpitude, which stops his time. And in regards to that matter, which is, I think, the government's argument, the only argument that it's put forward is that the 2009 theft conviction stops his time. But in fact, it doesn't. And so, the Board of Immigration Appeals, in its initial decision, made that footnote and stated that, hey, it looks like he's got this 2009 theft conviction, and that may stop his time. But they didn't rely on that. They relied on his continuous physical presence. And they said it's not important in this case because really, voluntary return is what interrupts his physical presence. Plus, they cited to Castillo-Cruz the circuit's precedential decision. And that decision speaks right to this case. Castillo-Cruz had a theft conviction out of California. His sentence was two years probation. And this court discussed it and said that he qualified for the PETIA exception, and therefore, it did not stop time for him to apply for cancellation removal. And this court remanded to the Board of Immigration Appeals, which should be the same outcome here. The 2009 theft conviction is the same one Mr. Setesedo has. The administrative record shows that he was sentenced for three years probation. And that shows that the maximum penalty was six months. And so, it's clearly under the PETIA exception, and it does not stop his time to accrue physical presence. Therefore, in the board's initial decision, citing to Castillo-Cruz, they answered the question, it's not applicable. So, this argument about the theft conviction is really, it doesn't matter. It's clearly accepted under the PETIA offense exception. So, the board, in this case, again, just taking just the last petition for review, aired very clearly because it issued its decision in 2019, in May 31st, when this court had already issued Lopez v. Barr. And Lopez v. Barr had already said that we cannot satisfy, you can't have collective, you can't have multiple documents to satisfy the provision of 1229A. And so, they issued the decision wrongly. There was already Lopez v. Barr controlling, and they just ignored it. And the same issue with the sua sponte request, they just said, there's no exceptional circumstances, but clearly there was, because they were relying on a misreading of Pereira saying that the notice of hearing would perfect the notice to appear, which it did not. So, for those two reasons alone, this court should grant the petition for review and remand. And again, I already discussed why- Can I go back to the PETIA offense exception? Because there's, the exception, that exception only applies if the alien, quote, committed only one crime, close quote. But he committed more than one crime. Why would that not defeat the PETIA offense exception? Yes, Judge, you're correct. He committed several crimes, but none of them were crimes involving moral turpitude except for the- Says commit only one crime, not only one such crime. If it said such crime, then it would be limited to other crimes of moral turpitude, but it just says one crime. He has to commit a crime involving moral turpitude in order for him to be disqualified. Correct, which he has, but then the PETIA offense exception says that if certain conditions are met, which are all met here, he would accept that it doesn't apply unless he's only committed one crime. He hasn't committed only one crime, so that would seem to suggest he doesn't get the benefit of the PETIA offense exception. Well, in Castillo-Cruz, he also had several crimes. And so the court here in the Ninth Circuit said that he could be eligible for cancellation of removal despite multiple crimes because he only had one crime that was a CIMT. And that one crime was the same crime that Mr. Cedesello has, the petty theft conviction. Did you want to save the rest of your time, counsel? Yes, Judge, thank you. May it please the court. My name is Jesse Lorenz, and I represent the Attorney General of the United States. This court should deny these consolidated petitions for review. This court asked us to address Patel. It's the government's contention that most of the challenges to the 2007 voluntary return are factual in nature and therefore would precluded from review by Patel. But even if they aren't, substantial evidence supports the agency's conclusion that Ceresetto knowingly and voluntarily accepted a voluntary return in lieu of formal removal proceedings. He was given three options on the form, and one of them was to proceed before an immigration judge. It mentioned nothing about a fear of return. So it seems that he was aware that he could see an immigration judge but chose to return voluntarily. He could see an immigration judge if he had a fear of return. But what isn't apparent from that is that he could see an immigration judge about cancellation of removal, which has nothing to do with fear of return. Well, yes, Your Honor, but one of the options is that let the immigration judge see an immigration judge and to discuss my removal or determine my removal. I forget the exact language, but it's not so limited to just see an immigration judge because I have a fear or return. There's a third option there too. I don't think he's disputing that he signed the form. The question really is whether signing the form was voluntary or whether he was misled into signing the form. So counsel's arguing that Ibarra Flores controls this case. How do you distinguish that? Well, again, I would note that under Patel, the government thinks this is a factual dispute. But also, I mean, I think we have a contemporaneously created record. In this case, we have both the form and the I-213 documenting what happened at the time. He didn't testify about this until well after the fact. And his testimony even there is pretty vague. I mean, he talks about not really remembering what happens. There seems to be two removals in October, and he wasn't exactly clear on to which one he was speaking of. But I think that's clear from the record. So I don't think there's anything to really undercut the record that the government kept here showing that this was a voluntary and knowing and sufficiently formal process. What about his testimony that he was informed he could seek a hearing only if he feared returning to Mexico? Well, again, that's his testimony that he said way after the fact. Again, he said he didn't remember exactly what happened. I mean, and the government countered with evidence of contemporaneously created records, records that are created in a normal course, documenting that he was given the three options according to the form. Why isn't that a question for the IJ or the BIA to grapple with instead of having the circuit do so in the first instance? I mean, you have arguments, you know, his testimony was vague, it was fuzzy, consistent or whatever, but that's a factual determination that the IJ and the BIA usually engage in, not for us to decide, right? Well, right. I mean, that's our argument under Patel that this portion shouldn't analyze that. I mean, that the government, that the IJ and board That's the Ibarra Flores situation, right? If you're misled into signing a voluntary report or form, then it gets remanded for the IJ to make that determination in the first instance, the government may prevail with some of the arguments that you're advancing to us today, his memory isn't perfect, he testified after the fact, etc. But I don't know why you're making those arguments here. Well, those were in response to opposing counsel's arguments. But I mean, the arguments were raised to the board, and they considered and rejected them. I mean, that the board decided that this was a voluntary and going process. I'm sorry for interrupting. Where did they know that argument? As I read the record, the BIA and the IJ did not grapple with this issue. Well, they have, they don't have, they don't have to grapple with every argument. They don't, they have a presumption of regularity that they did consider all the arguments before them. These specific arguments weren't before them, then this part wouldn't have jurisdiction. It says right in the board's decision on page two, it says the respondent argues his return was not knowing and voluntary and thus does not break his continuous physical presence. And then it goes on to explain on page three why the board rejects that. So this issue has been considered by the board. Right, I agree with that. I mean, I think that the agency did consider this issue. And again, I think this is an actual finding that this court under Patel wouldn't have jurisdiction to review, but also that the record evidence supports, even if this court does have jurisdiction to review that, the record evidence supports that this is a knowing and voluntary process and thus broke his presence in 2007. Well, the record shows that they considered it and said the agents did not advise him that he might have relief available, which they're not bound to do. Is that consideration of the argument that he was misled in designing the voluntary departure form? Or are they addressing a different issue? I mean, I think it is, but I didn't, you know, I didn't write the decision. I don't know what, you know, a lot of times these board decisions, they don't address every argument. And this court has held under the presumption of regularity that they don't have to address, they don't have to write an exegesis on everything. They don't have to address every argument. And it's just, it's enough to show that they considered the claims and, you know, rendered a reasoned decision. And I think that's clear from the record here that they've considered his claims and rendered a reasoned decision. You know, the DHS agents, I don't think there's anything in the statute of regulation that requires them in these situations to consider every possible form of relief. You know, this is a little different than a hearing before an immigration judge. Like I said, the government here kept a contemporaneous record of what happened and all of his allegations are well after the fact and, you know, based on a fuzzy memory potentially. Can I have you address the petty theft exception? Sure. Again, so that's, I'm sorry, I didn't catch that last part. The agency didn't address the petty offense exception. Can you address that? Well, sure. I mean, that wasn't something that was raised before the agency, the petty offense exception. And I think it would be because she was moving to, or because he was moving to reopen or reconsider, it's his heavy burden to show that reopening or reconsideration is warranted. So by him not addressing even the crime in his motion to consider and reopen, I think that that was not something that was before the agency. That would be something that he would have had to exhaust it in his motion and he did not. I agree that the statutory language regarding one crime makes it unclear whether he would qualify for the exception here because he does have a 2012 substance, a controlled substance conviction. But again, that's not something I can say for a certainty. That would be something that would have to be erased before the agency. And simply to put that, the petitioner here just did not raise that issue. So it's another, it's another, again, it's- The footnote three of the BIA decision is putting the petty offense exception in front of us. As it acknowledges, it says, although not considered or discussed by the immigration judge, the commission of a crime involving moral turpitude will also stop the clock for continuous physical presence. And then goes on to discuss the petty offense exception and ultimately says it doesn't matter because of the voluntary departure. But is that enough to put it in front of us or would this have to go back if we found that made a difference? Well, I don't think it, I don't think that footnote discusses the petty offense exception. It talks about petty theft, but that's what his crime was. I could be reading this wrong, but- So you see that as just addressing whether it's a crime of moral turpitude and not petty offense exception to the crime of moral turpitude. That's my understanding. But I mean, I see petty, I do see petty theft, but that's my That relates to the board's original decision on appeal where it didn't really address the 2009 crime. On consideration it did, but it was just as an additional reason why petitioner didn't meet her burdens for, petitioner didn't meet his burden for reopening or reconsideration. So it's kind of different procedurally in that regard. Can you address the 10-year continuous period? Is the government still relying on the 2012 NTA or are you relying on what Judge Collins hinted at, the April 2017 cancellation request? Yeah, we're not, I mean, obviously in light of Ms. Chavez, we can't rely on the NTA stopping the time here. But the statutory language does say 10 years back from the date of application. Even if that application continued to the immigration judge's decision, you know, the trier of fact who was making the decision on this application at that time, immigration judge, his decision I believe is in April 2017 and the break, the voluntary returns in October 2007. So even in that situation, he doesn't satisfy the 10 years. And then obviously the board is just appealing, reviewing an appeal, so they're not making any new findings of fact. So I think at the very latest here, the 10 years would be coming back from the immigration judge's decision in 2017. And that was not 10 years after the two. Do you disagree with the proposition that we count the 10 years back from the date of the application, which is what the statute says, or is it a later date? No, I don't disagree with the statutory language. What I'm saying is even if it's considered a continuing application until the immigration judge's decision, that's still within the 10 years. That's still not, he still doesn't establish 10 years. But I mean, the statutory language, it to me is clear, at least, it says 10 years back from the date of the application. If you, your honor, if I may ask this question, and your view is that we don't have to remand that back to the BIA because it's still just based on the 10-year continuous period, even though the dates are different, the triggering event is different here? I don't think so. I mean, I think if that's an argument, petitioner wishes to push, you'd have to ask the board to reopen at this time. Like I said, this decision is based on what the immigration judge saw in 2017 at that time. So I don't think that's something that this court should do. But if petitioner wants to advance that argument, I think a motion to reopen before the board would be the most appropriate vehicle. If there's no further questions about the cancellation of removal application, I can address withholding of removal and cap protection briefly if this court wishes. The record fails to compel the conclusion that he's eligible for withholding or removal. His alleged fear of harm is undercut by the fact that his mother and sister remain in Mexico and have not been harmed. But also, he didn't show why anybody would target him because of his relationship to his cousin, who he admittedly didn't have much contact with. Similarly, for cap protection, his claim was basically based on country conditions, but he didn't show why anybody would specifically target him. Also, the agency didn't abuse its discretion in denying his motion for continuance. He was granted four years of continuances total to seek DACA. And that's an application that the immigration judge couldn't adjudicate. And ultimately, USCIS did and denied that. If there's no further questions, the government rests. Thank you, counsel. Thank you. I just would like to address, we are not contesting the asylum or the motion to continue. So, those are non-issues, I think, for us in terms of this petition for review. I think that we're really relying on that second petition for review and also the knowing and voluntary return. But I would like to just point out that the motion to reconsider that we filed right after Pereira was issued, did not have to submit any new application of new facts. It was motion to reconsider based on new law, the new law which was directly applicable to the petitioner's case. Also, I'd like to point out that the government agrees that the footnote three does not address the petty offense exception. It agrees that he was convicted of a theft conviction in California. And it's similar to, it is exact same conviction that Mr. Castillo-Cruz was and that the board did not address the petty offense exception. And therefore, for that reason, it should be remanded to the board so that they can address it in the first instance. And second- Question going back to this issue of the voluntariness because, you know, your key case you rely on is Ibarra-Flores. But as I read Ibarra-Flores, looking at page 618 to 619, it seems very clear that they are applying the substantial evidence standard to the question of whether or not he knowingly involuntarily accepted administrative voluntary departure. So, that means that Ibarra-Flores says that it's a factual question reviewed for substantial evidence. But we now know on Patel that if it's a factual question, it's not reviewed at all. And so then, if you put Ibarra-Flores and Patel together, it seems we can't review that question. If you think I'm wrong, tell me where you think I made a mistake. Right. Well, I think that it's not a purely factual question. I guess that's where I respectfully disagree. I believe that it's a mixed question of fact and law. So, it's not disputed that he left and that he signed a document. But what's disputed is was it voluntary. And there's a standard. Ibarra-Flores has said, this is the standard that we're going to use to say if he actually has a voluntary return. And so, that's the issue that we're applying law to those undisputed facts. And that would make it, you know, for this court to be able to review that issue. Ken, there was a mistake in how they articulated the legal standard that they applied to the facts in determining voluntariness. I'm sorry. What's the question again, Your Honor? Do you contend that there was an error by the board or by the IJ in how they articulated this legal standard for assessing voluntariness that they then applied to the facts of the case? Or is your application that they misapplied the legal standard to the facts of the case? I believe that they misapplied the legal standard to the facts of the case. And do you contend that the facts were erroneously found in any respect, say, with respect to the issue of what he was told? I mean, I think that the facts are undisputed is that he left at a certain time and he's trying to form. That's undisputed. And that's why I believe that this court would still have jurisdiction because it's the standard applied to those undisputed facts. All right. You're over time, counsel. Thank you very much, both sides for your argument. Thank you. Appreciate it. The matter is submitted.
judges: NGUYEN, COLLINS, LEE